**HUDSON RIVER FISHERMEN'S ASS'N and The Friends of Wickers Creek Archaeological Site, Plaintiffs,**

v.

**Graig ARCURI, as Partner in Mt. Mercy Associates and as President of CM Realty Developers, Inc.; Mt. Mercy Associates; & CM Realty Developers, Inc., Defendants.**

**No. 91 Civ. 4823 (VLB).**

United States District Court, S.D. New York.

Sept. 6, 1994.

F.Supp. at 82, 84 (S.D.N.Y.1993).

Robert F. Kennedy, Jr., Steven P. Solow, Robert F. Snow, Pace Environmental Litigation Clinic, White Plains, NY, for plaintiffs.

Paul A. Levine, MacKrell, Rowlands & Premo, Albany, NY, Stephan J. Mignano, Finnegan & Mignano, Peekskill, NY, for defendant.

### MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

#### I

This case is a citizens' suit brought under Section 505 of the Federal Clean Water Pollution Control Act, 33 U.S.C. 1251 *et seq.*, (the "Act" or "Clean Water Act") alleging violation of the Act by the owner and developer of property in Dobbs Ferry, New York. The issues to be considered involve:

(a) the appropriateness of a default judgment against inactive corporate and partnership entities which appear to have title to property on which construction has been abandoned leaving environmental problems, and

(b) criteria for appropriate attorney's fee award in such cases.

Defendants comprise the alleged owner of the property,[1] a real estate development limited partnership, and its general partner, a realty corporation (collectively the "property owner defendants"), and also Graig Arcuri individually and as limited partner and president respectively of the entities involved in ownership and development of the property.

Plaintiffs, non-profit environmental conservation organizations, seek relief for alleged discharges of pollutants from the abandoned construction site into a tributary of the Hudson River without a permit as required by sections 402 and 404 of the Clean Water Act, 33 U.S.C. §§ 1342, 1344.

This court has jurisdiction under 33 U.S.C. § 1365(a)(1) and 28 U.S.C. § 1331.[2]

Settlement was reached with Mr. Arcuri in his individual capacity by stipulation so-ordered on February 17, 1992.[3] Plaintiffs' present motion for a default judgment under Fed.R.Civ.P. 55(b)(2) against the property owner defendants, who have not answered the amended complaint (the "complaint") or otherwise responded, seeks relief including an injunctive order and statutory civil penalties.

The motion is granted to the extent of finding that the property owner defendants are found to have violated the Act. Injunctive relief as set forth below is also warranted.

This case is referred to United States Magistrate Judge Mark D. Fox for a report and recommendation as to appropriate statutory civil penalties and reasonable attorney's fees to which plaintiffs are entitled.

#### II

The uncontroverted facts asserted in the complaint and in plaintiffs' affidavits are treated as true in what follows. The property involved, located on the banks of Wickers Creek, a tributary of the Hudson River, is an

---

1. Plaintiff's counsel represents that as of August 5, 1994 defendant Mt. Mercy Associates continued to be the owner of record of the property at issue, see Dkt. # 28.

2. Plaintiffs appear to have given timely notice as required by 33 U.S.C. § 1365(b)(1)(A) to federal and state agencies, and state that no administrative proceeding has been initiated, and that no other bar exists to plaintiffs' pursuit of this citizen's action.

3. Plaintiffs have withdrawn without prejudice the motion for a default judgment as against Mr. Arcuri in his capacity as a limited partner in defendant Mr. Mercy Associates and as president of defendant CM Realty Developers, Inc. pending efforts to resolve matters as to him. Should the motion be renewed, the effect of the settlement with Mr. Arcuri in his individual capacity, at which time he was represented by Stephan J. Mignano, Esq., will need to be considered.

abandoned construction site (the "site").[4] The property owner defendants received permission from municipal authorities in 1987 to develop a maximum of 140 clustered townhouses on the property. Beginning in 1987 local environmental authorities notified the property owner defendants of inadequacy of sediment and erosion control plans for the development of the property. In November 1990, demolition of a model townhouse that had been constructed on the site was ordered by the Westchester County Supreme Court, in part because erosion presented an imminent danger of collapse. A second unit remains standing but vacant.

"Pollutants" as defined in 33 U.S.C. § 1362(6), including solid waste, wrecked or discarded equipment, garbage, rock, sand and dirt, have been and continue to be discharged from the site into a creek under conditions triggering related definitions, e.g., section 1362(14) (defining "point source"), making the Clean Water Act applicable. The creek is a tributary of the Hudson River, a navigable waterway of the United States as defined by 33 U.S.C. § 1362(7). Because of inadequate controls, surface water runoff erodes the river bank each time there is significant rainfall.

■ These discharges emanate from a point source or sources into navigable waters without a permit as required by 33 U.S.C. § 1311. The discharge of the pollutants in the absence of a permit constitutes a violation of the Act for each day that such material remains in the creek.

No remedial action appears to have been taken by the property owners. Although inactive with respect to the townhouse development at issue here, the economic viability of the limited partnership is unclear; the corporate general partner was dissolved by proclamation on December 29, 1993, some two years after being added as a defendant in this litigation.

## III

■ Under the Clean Water Act, "it is illegal for anyone to discharge pollutants into the Nation's waters except pursuant to a permit." *Milwaukee v. Illinois*, 451 U.S. 304, 310, 101 S.Ct. 1784, 1789, 68 L.Ed.2d 114 (1987); 33 U.S.C. §§ 1311, 1342, 1344. The Act's requirement that all discharges covered by the statute must have an appropriate permit "is unconditional and absolute." *Kitlutsisti v. Arco Alaska, Inc.*, 592 F.Supp. 832 (D.Alaska 1984), *appeal dismissed, opinion vacated* 782 F.2d 800 (9th Cir.1986).[5] Although the statute contains numerous "exceptions that allow the discharge of many pollutants," *Atlantic States Legal Foundation, Inc. v. Eastman Kodak Co.*, 12 F.3d 353, 357 (2d Cir.1994), *pet. for cert. filed*, No. 93–1839, 62 U.S.L.W. 3794 (May 18, 1994), there must first be compliance with the regulatory program of the Act including application for a permit. *Id.*

■ Section 1311 provides that "Except as in compliance with this section and sections … 1342 and 1344 of this title, the discharge of any pollutant by any person shall be unlawful." Section 1342 describes the national pollutant discharge elimination system and procedures for obtaining a permit. Section 1344 is entitled "Permits for dredged or fill material." Plaintiffs have asserted a valid cause of action under the Clean Water Act against the non-responding property owner defendants so as to establish their liability under these provisions of the Act. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2nd Cir.1981); Fed.R.Civ.P. 55(b).

■ Section 1311 being broad in its scope necessarily generates possible violations which may differ widely in the scope of any actual threat to the environment, a matter which may be taken into consideration in determining an appropriate civil penalty, as discussed in part V below.

---

4. The site is located in the Village of Dobbs Ferry, Greenburgh, NY, in Westchester County, cited in the complaint at ¶ 17 as sheet 9, parcels 69, 72 and 84, but apparently now known as Section 7, Sheet 9, parcels 1, 1A and 3, see Dkt. # 29, letter from plaintiffs dated March 11, 1994.

5. The vacatur of this decision without comment on the merits has no impact on its value solely as persuasive authority although not treated as binding. See *IBM Credit Corp. v. United Home*, 848 F.Supp. 495 (S.D.N.Y.1994).

■ Injunctive relief, on the other hand, is warranted where, as here, plaintiffs' uncontroverted allegation that violations causing irreparable environmental harm are likely to continue on the abandoned site, the equities tip decisively in favor of the public interest represented by the plaintiffs in this citizens' suit, and legal remedies are inadequate to prevent further violations. See *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982).

Mt. Mercy Associates and its general partner C.M. Realty Developers, Inc., are permanently enjoined from using the site so as to violate the Clean Water Act.

■ Such injunctive relief as well as statutory damages and attorney's fees and costs found to be appropriate at inquest by the Magistrate Judge are available under New York law even where a corporation is dissolved, if the cause of action as here accrues before dissolution, *Independent Investor Protective League v. Time, Inc.*, 50 N.Y.2d 259, 262, 428 N.Y.S.2d 671, 406 N.E.2d 486 (1980); N.Y.B.C.L. § 1006(a)(4), (b). Such remedies are also available against the development limited partnership, whether dissolved or not, pursuant to N.Y. Partnership Law 92, 121–803(b), 121–804(a) (enacted 1990, effective July 1, 1991).[6]

### IV

■ The purpose of the statute being to restore and maintain the "chemical, physical and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a), however, an essential question in this case is the potential effectiveness of remedial relief where developers have abandoned a construction site and there is little likelihood of renewal of activity by the current property owner.

Appropriate remedial measures which may be necessary or required so that the property may be administered in accordance with the environmental protection laws may be reconsidered should any activity by the property owner defendants be initiated.

6. Plaintiff alleges that the limited partnership was served in this action on February 3, 1992

### V

■ Congress has provided that any person who violates section 1311 "shall be subject to a civil penalty." 33 U.S.C. § 1319(d). On the basis of the property owner defendants' liability as established here, the plaintiffs' application for statutory penalties is granted. See *Atlantic States Legal Found'n v. Pan American Tanning*, 993 F.2d 1017, 1020–21 (2d Cir.1993).

Adjudication of the amount will be determined after the Magistrate Judge's Report and Recommendation is filed. If any funds become available to pay the penalty, the court reserves jurisdiction to appoint a trustee if appropriate to administer funds for the purpose of remedying the consequences of the violations described above. See *United States v. Van Leuzen*, 816 F.Supp. 1171, 1184–84 (S.D.Tex.1993).

Plaintiffs' request for the maximum penalty of $25,000 per day for 225 days, while theoretically possible under section 1319(d) (as amended 1987), requires further consideration of all of the circumstances, including actual realistic threat to the environment, the nature, size and scope of the land use and activities involved, and post-complaint violations or violations that were on-going at the time plaintiffs filed the suit, id. 993 F.2d at 1021, based on the factors set forth in 33 U.S.C. § 1319(d):

> the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require.

The realistic responsibility, culpability, and responsiveness of those involved must thus be considered. See *State of New York v. Lashins Arcade Co.*, 856 F.Supp. 153 (S.D.N.Y.1994). Assessment of these factors cannot be made on the present record. Accordingly this matter is referred to Judge Fox.

and that the violations continue to the present date.

## VI

■ Plaintiffs have succeeded on the significant issue of establishing the property owner defendants' liability under the Clean Water Act so as to entitle plaintiffs to be considered prevailing parties. See *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).[7] To the extent that efforts may be initiated to remediate adverse environmental impact on the property by seeking judgment against the property *in rem*, additional benefit to the public as intended by the Act may be achieved.

Plaintiffs have brought about a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute," *Texas State Teacher's Ass'n v. Garland Independent School District*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989), so as to make an award of the costs of litigation in this citizens' suit appropriate under 33 U.S.C. § 1365(d). See *Dague v. City of Burlington*, 935 F.2d 1343, 1357 (2d Cir.1991), *rev'd in part on other grounds sub nom City of Burlington v. Dague*, —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

The award should be equal to full compensation comparable to that of a fee-paying client, *Missouri v. Jenkins*, 491 U.S. 274, 286, 109 S.Ct. 2463, 2470–71, 105 L.Ed.2d 229 (1989). The starting point for computing the "lodestar" amount, which is presumed to be reasonable in a case under a fee shifting statute such as 33 U.S.C. § 1365(d), is "mul-tiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984).[8] Although enhancement is no longer justified under *Blum*, 465 U.S. at 898–900, 104 S.Ct. at 1548–50, and *City of Burlington v. Dague*, —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), reductions may be made where warranted based on such factors as novelty, difficulty and results obtained. See *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939.

Here, plaintiffs seek attorney's fees of $33,128.25 [9] and expenses of $210.08. The reasonableness of the fees requested is to be considered by Judge Fox in his Report and Recommendation.

Because the present application does not pertain to Mr. Arcuri, any of the fees sought to be recovered that relate to Mr. Arcuri or his alleged conduct or liability in any capacity cannot be recovered on this motion as the decision after the Magistrate Judge files his Report and Recommendation cannot be a "final order" as to Mr. Arcuri, as required by section 1365(d).[10]

## VII

Because Mr. Arcuri or his counsel may be able to provide information as to the whereabout of others who may have an interest in this litigation including the inquest before Judge Fox, counsel for Mr. Arcuri is to send a copy of this memorandum order to any known limited partners of defendant Mt. Mercy Associates and any successors-in-in-

---

**7.** The court of appeals noted in *Dague v. City of Burlington*, 935 F.2d 1343, 1357 (2d Cir.1991), *rev'd in part on other grounds sub nom City of Burlington v. Dague*, —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) that "the principles governing fee awards under [42 U.S.C. § 1988] are applicable to [the] attorney's fee provision [under the Clean Water Act, 33 U.S.C. § 1365(d)] because of their substantially similar language."

**8.** Where fees are awarded from a fund produced by litigation or settlement, different but partially overlapping considerations apply. See *In re Painwebber Securities Litigation*, 1994 WL 416020 (S.D.N.Y. Aug. 5, 1994, Dkt. No. 86 Civ. 6776); *In re Presidential Life Securities*, 857 F.Supp. 331 (S.D.N.Y.1994) and authorities cited.

**9.** See amended statement for default judgment, Dkt. # 21, letter dated Jan. 19, 1994. In that letter, plaintiffs reduced the original amount sought for attorney's fees by $3,000 to reflect the settlement of $3,000 with Mr. Arcuri, a number claimed to be based on "a fair assessment of those charges specifically attributable to Mr. Arcuri in his individual capacity." Id.

**10.** Consideration of the fee award issue as to the property owner defendants presumes that this court's determination of the motion after filing of the Magistrate Judge's Report and Recommendation will include certification pursuant to Fed. R.Civ.P. 54(b) that a final judgment be entered as to these defendants so as to permit any appropriate action leading to remediation of the property to be taken whether or not matters are resolved as to Mr. Arcuri.

terest to defendant C.M. Realty Developers, Inc., or other potentially interested parties, within fourteen (14) days of the date of this memorandum order, and to notify the court in writing of those to whom copies were sent.

**SO ORDERED.**