**HUDSON RIVERKEEPER FUND, INC., Plaintiff,**

**Village of Hastings–On–Hudson, Plaintiff–Intervenor,**

v.

**HARBOR AT HASTINGS ASSOCIATES, FC–Hastings, L.P., East Shore Associates, L.P., East Shore Corporation, and Columbia River Corporation, Defendants.**

**FC–HASTINGS, L.P., and FC–Hastings, Inc., Third–Party Plaintiffs,**

v.

**Edward FUCCI, Gregory Fucci, Thomas Ambrosio, Age Carting Corporation, A.N.E. Recycling Corporation, individually and d/b/a Age Carting, Targre Painting Company, Inc., Activated Carting Corporation, Fucci Enterprise Corporation and John Does 1–5, Third–Party Defendants.**

No. 94 Civ. 2742 (CLB).

United States District Court,
S.D. New York.

March 5, 1996.

Karl S. Coplan, Michael Turschmann, Student Intern, Pace Environmental Litigation Clinic, White Plains, NY, for Plaintiff.

Mark Chertok, Sive Paget & Riesel, P.C., New York City, for Plaintiff–Intervenor Village of Hastings–On–Hudson.

Brief Kesselman & Knapp, New York City, Jenner & Block, Chicago, IL, Matthew Hoffman, Rosen & Reade, New York City, for Defendants Harbor at Hastings Associates, FC Hastings L.P., East Shore Assoc., East Shore Corp., Columbia River Corp., FC Hastings LP & FC Hastings Inc.

Solomon Abrahams, White Plains, NY, for Third–Party Defendants Edward Fucci and Gregory A. Fucci, Sr.

MEMORANDUM & ORDER

BRIEANT, District Judge.

Defendants Harbor at Hastings Associates, East Shore Associates, L.P., East Shore Corporation, and Columbia River Corporation seek an order dismissing this action and granting judgment on the pleadings, pursuant to Rules 12(b) and 12(c) of the Federal Rules of Civil Procedure. In the action, plaintiffs The Village of Hastings-on-Hudson and the Hudson Riverkeeper Fund seek recovery pursuant to provisions of the Federal Resource Conservation and Recovery Act (hereinafter referred to as "RCRA") § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A). The Riverkeeper also seeks recovery pursuant to RCRA § 7002(a)(1)(B) and the Clean Water Act. In addressing the merits of the motion, all parties have made large submissions of documents and exhibits which are external to the pleadings. In addition, oral argument of the issues presented in the motion had to be suspended and continued on two separate occasions to allow the parties to await the development of external factors which could impact the case. Accordingly, this Court elects to make the conversion contemplated by Rules 12(b) and 12(c) and treat the motion as one based on Rule 56.

The facts stated below appear from the papers before the Court or were conceded on oral argument. Defendant Harbor at Hastings Associates is the owner of a 31–acre industrial property located directly on the riverfront in the Village of Hastings-on-Hudson, Westchester County, New York, known as the former Anaconda Wire Mill. The other defendants are partners or principals of Harbor at Hastings Associates. The third party defendants had until recently leased a portion of the industrial site known as Building 15 from Harbor at Hastings Associates. During their occupancy of Building 15, the third party defendants operated a solid waste transfer station on the premises through an entity known as Age Carting. The permit under which the transfer station for recycling and processing operated allowed for the total storage of no more than 2,400 cubic yards of material at the site. Recyclable material was to be stored for a period no longer than one

week, and non-recyclable material was to be stored for no longer than two weeks.

In operating the facility, Age Carting allegedly violated the zoning law of the village, and various conditions of its operating permit from the New York State Department of Environmental Conservation, (the "DEC"). The violations primarily concerned the amount of material stored, and now abandoned, which is currently estimated to be 80,000 cubic yards of material.

More than three years ago, the State of New York brought suit in New York Supreme Court, Westchester County, to clean up the site. That suit resulted in an interlocutory judgment against Age Carting and its principals directing those defendants to develop a clean up plan for the site and to post a bond in the amount of $2,000,000, the estimated cost to clean up the site. The defendants in that action have yet to develop a satisfactory clean up plan and the action is still being pursued in New York Supreme Court. Because of the failure of Age Carting to comply with the judgment, the state court held Age Carting in contempt of court. On October 27, 1995, the Village and the State received notice that Edward and Gregory Fucci, the principals of Age Carting, had filed bankruptcy under Chapter 7 of the Federal Bankruptcy code. The Fucci's moved for a stay of the state contempt proceedings but that motion was denied and those proceedings were commenced on October 31, 1995. The contempt hearing continued through December 1995 and the State filed its post hearing memorandum of law on January 5, 1996. Thereafter Justice Coppola held Age Carting in contempt of Court and imposed a fine of $150,000, to be applied to the clean up costs of the site.

Two years after the State filed its own suit, the plaintiffs in this action filed this federal case seeking a remediation plan and attorney's fees. In October of 1995, the State of New York commenced an additional enforcement proceeding in New York Supreme Court, Westchester County, against the Harbor defendants and Phillip Eisenberg. In that action entitled *State of New York et al. v. Harbor at Hastings Associates, et al.*, 95–17125, the State moved for a pre-

liminary injunction ordering the Harbor Defendants and Mr. Eisenberg to remove all waste from the site. This remains sub judice before Justice Coppola.

In moving to dismiss, the defendants claim that under the relevant provisions of the Resource Conservation and Recovery Act and the Clean Water Act, plaintiffs are prohibited from pursuing their claims when the State of New York has already begun and is diligently prosecuting a lawsuit to correct the same environmental conditions.

42 U.S.C. § 6972 entitled "Citizen suits", provides in relevant part as follows:

(a) In general

Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or

(B) against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment;

\*      \*      \*      \*      \*      \*

(b) Actions prohibited

(1) No action may be commenced under subsection (a)(1)(A) of this section—

\*      \*      \*      \*      \*      \*

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order.

(2)(C) No action may be commenced under subsection (a)(1)(B) of this section if the State, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment—

(i) has commenced and is diligently prosecuting an action under subsection (a)(1)(B) of this section;

(ii) is actually engaging in a removal action under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9604]; or

(iii) has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9604] and is diligently proceeding with a remedial action under that Act [42 U.S.C.A. § 9601 et seq.].

This Court considers first whether the pendency of the prior state action acts as a bar to the citizens suit under (b)(1)(B). The plaintiffs argue that it does not because the state suits were not brought under RCRA. The statute, in section (b)(1)(B) provides that no action may be brought if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order. In response to the defendants' claims that a citizen's suit pursuant to RCRA is unavailable because of the pending State action, the plaintiffs argue that the use of the word "such" in the statute makes it clear that Congress intended that actions be barred only when the underlying state action is brought "pursuant to RCRA". Because the New York action was silent as to its legal basis, and therefore must have been based only upon local law, plaintiff argues RCRA's bar on citizen's suits is not applicable. In reply, defendant argues that the inclusion of "condition" in the language of the

statute evidences Congressional intent to bar actions such as this where the underlying state action seeks to remedy the same condition as the citizen's action.

This appears to raise an issue of first impression in this district, which has not been addressed by the Second Circuit. However, in *Dedham Water Co. v. Cumberland Farms Dairy*, 889 F.2d 1146 (1st Cir.1989), a case cited by the movant, the Court of Appeals for the First Circuit dismissed RCRA claims in favor of prior pending state enforcement. Other cases seem to go both ways on the issue. *See McGregor v. Industrial Excess Landfill, Inc.*, 709 F.Supp. 1401 (N.D.Ohio 1987), *aff'd on other grounds* 856 F.2d 39 (6th Cir.1988), *contra; Fallowfield Dev. Corp. v. Strunk*, 1990 WL 52745, 1990 U.S. Dist. LEXIS 4820 (E.D.Pa.1990) (Where in dictum, court in footnote observed that state criminal proceedings were irrelevant under RCRA because the state proceedings were not pursuant to RCRA.)

We point out in this connection that the Supreme Court of the State of New York, which traces a continuous existence since 1691, prior to the establishment of the State of New York itself, is unusual because it is the court of general jurisdiction in the state which has the broadest powers of adjudication which a court can have. See New York State Constitution, Article 6, § 7 ("The supreme court shall have general original jurisdiction in law and equity ..."). Under § 140–b of the Judiciary Law of the State of New York the Legislature has provided that,

"The general jurisdiction in law and equity which the Supreme Court possesses under the provisions of the Constitution includes all the jurisdiction which was possessed and exercised by the Supreme Court of the Colony of New York at any time and by the Court of Chancery in England on the Fourth day of July Seventeen Hundred Seventy Six, with the exceptions, additions and limitations created and imposed by the Constitution and laws of the State. Subject to those exceptions and limitations the Supreme Court of the State has all of the powers and authorities of each of these courts and may exercise them in like manner."

Because of the breadth of its historical statutory and inherent powers the Supreme Court of New York is not hampered by provisions similar to Rule 8(a) of the Federal Rules of Civil Procedure which requires that a federal complaint shall contain "a short and plain statement of the grounds upon which the Court's jurisdiction depends".

Similarly, the New York law pertaining to a complaint, § 3013 of the New York Civil Practice Law and Rules, simply requires that, "statements in a pleading shall be sufficiently particular to give the court and parties notice of the *transactions, occurrences or a series of transactions or occurrences* intended to be proved and the material elements of each cause of action or defense". (Emphasis added.) In other words, it is not necessary for a pleader to tell the New York Supreme Court that the complaint is brought pursuant to RCRA or anything else. The plaintiff need merely identify the transactions or occurrences and the Supreme Court is then able, and bound to do justice under whatever law applies. Therefore, because of this breadth of jurisdiction possessed by the New York Supreme Court and its rules of pleading, it is impossible to say that any lawsuit arising out of an occurrence which implicates the RCRA is *not* being brought pursuant to that statute. It is also abundantly clear that, except where forbidden by Congress, the Supreme Court of New York has the power and indeed the obligation to grant remedies authorized by federal statutes. The Supreme Court of the United States has held as recently as 1990 that:

Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more convenient forum—although both might well be true—but because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature. The Supremacy Clause makes those laws "the supreme Law of the Land," and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure. "The laws of the United States" are laws in the several

States, and just as much binding on the citizens and courts thereof as the State laws are.... The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent. *Howlett v. Rose*, 496 U.S. 356, 367, [110 S.Ct. 2430, 2438, 110 L.Ed.2d 332] (1990), *citing Claflin v. Houseman*, 93 U.S. 130, 136–137 [23 L.Ed. 833] (1876).

Whether or not the Supreme Court of New York in the pending litigation involving the subject matter of this case is cited to the RCRA, that Court must, under the supremacy clause of the United States Constitution and under its own organic laws and statutes, invoke and apply all of the provisions of that statute where appropriate.

As noted earlier, the Riverkeeper is also requesting recovery pursuant to RCRA § 7002(a)(1)(B). An action brought under this section, which concerns an "imminent and substantial endangerment to health or the environment" is not barred by the same language as § 7002(a)(1)(A). Section 7002(b)(2)(C)(i) provides that a citizen's suit may not be brought if the State "has commenced and is diligently prosecuting an action under subsection (a)(1)(B) of this section." The language of this subsection seems to suggest that any state action, to qualify as barring the RCRA action, must be brought under the act itself. The pending state actions are, as noted earlier, silent as to what law they were brought under. The additional subsections of § 7002(b)(2)(C) provide that a citizen's suit under RCRA cannot be brought when the state is actually engaging in a remedial action under section 104 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 [42 U.S.C.A. § 9604]; (CERCLA) or has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of the CERCLA and is diligently proceeding with a remedial action under that Act. For the reasons discussed earlier, the Court concludes that the pending State Court action is

the equivalent of one brought under the RCRA, because as a matter of New York State jurisdiction and procedure, all cases brought in the New York Supreme Court are as a matter of law brought under all applicable federal statutory provisions applicable by their terms to the "occurrence or transaction" sued on, except where Congress has reserved exclusive jurisdiction to a federal court.

■ Once it is determined that the pending action by New York State qualifies under section (b)(1)(B) of the statute of this Court concludes that it does, it must then be shown that the state has been diligently prosecuting the action for it to act as a bar to citizen's suits.

The Fifth Circuit has held that the determination of whether a matter has been diligently prosecuted by the state is a question of fact. *Tanglewood East Homeowners v. Charles–Thomas, Inc.*, 849 F.2d 1568 (5th Cir.1988). Of course, we may take judicial notice of proceedings in other courts. *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736 (6th Cir.) cert. denied, 449 U.S. 996, 101 S.Ct. 535, 66 L.Ed.2d 294 (1980). The movant has submitted an appendix consisting of all relevant documents relating to the State action. Additionally, the parties to the state actions have been engaged in significant settlement discussions which may in themselves lead to the clean up of the site. This Court concludes that at least in the context of a state court proceeding, this action has been diligently prosecuted. A rocket docket New York does not have, but the Congress must have been aware that state court actions, throughout the nation, are often a slower paced version of justice than that to which the federal district courts aspire.

■ Plaintiffs next oppose the motions to dismiss because the federal action involves different parties than the state action. In *Supporters to Oppose Pollution v. Heritage Group*, 973 F.2d 1320 (7th Cir.1992), (hereinafter "StOP"), the Seventh Circuit observed that the statute requires compliance with such permit [or] regulation—not an action against the private party's chosen adversary, but an action to require compliance. Plain-

tiffs seek to distinguish that case by arguing that the defendant in the underlying action in that case was an *alter ego* to the defendant in the RCRA action. Judge Easterbrook's reasoning in the opinion appears to be based upon the plain meaning of the statute, and not the relationship between the defendants in the two actions. Plaintiff's concern in the StOP action was that the defendant had run out of money, but as the decision explained, "[t]he statute does not require that the EPA succeed; it requires only that the EPA *try, diligently*." (Emphasis in original.) The Seventh Circuit's opinion then used an example formulated by the Supreme Court in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 60, 108 S.Ct. 376, 378, 98 L.Ed.2d 306 (1987):

> "Suppose that the Administrator identified a violator of the Act and issued a compliance order.... Suppose further that the Administrator agreed not to assess or otherwise seek civil penalties on the condition that the violator take some extreme corrective action, such as to install particularly effective but expensive machinery, that it otherwise would not be obliged to take. If citizens could file suit ... in order to seek the civil penalties that the Administrator chose to forgo, then the Administrator's discretion to enforce the Act in the public interest would be curtailed considerably."

The policy concerns implicated in the forgoing example and relied on by the Seventh Circuit are compelling under the circumstances of this case as well. The argument made by the plaintiffs regarding the identity of the litigants in the state action as opposed to this action would have no effect on the concerns raised by the Supreme Court and the Seventh Circuit. A private plaintiff would still be able to control the litigation, a result not acceptable to Congress.

The Riverkeeper also brings a claim under the Clean Water Act. The basis for this claim is that some trash from Building 15 has fallen into the river and that some rainwater leaks into the building and passes into the river through runoff. For this claim to have merit the plaintiff must show that Building 15 is a "point source" as contemplated by 33 U.S.C. § 1362(14). In *United States v. Plaza Health Laboratories*, 3 F.3d 643 (2d Cir.1993), our Court of Appeals considered the definition of "point source". The Court held that "Although by its terms the definition of 'point source' is nonexclusive, the words used to define the term and the examples given ('pipe, ditch,' .. etc.) evoke images of physical structures and instrumentalities that systematically act as a means of conveying pollutants from an industrial source to navigable waterways." *Id.* at 646. It would seem unlikely that Building 15 would fit into this interpretation of point source as any discharge of material would not be deliberate or systematic.

Plaintiffs' reliance on *Hudson River Fishermen's Ass'n v. Arcuri*, 862 F.Supp. 73 (S.D.N.Y.1994) is misplaced. In that case pollutants including solid waste, wrecked or discarded equipment, garbage, rock, sand, and dirt, were entering a tributary of the Hudson River because of severe erosion around a model townhouse. Judge Broderick's opinion does not define the "point source" in terms of the Clean Water Act, as a townhouse as the plaintiffs argue here, but rather the riverbank of the tributary itself. Judge Broderick found that "[b]ecause of inadequate controls, surface runoff erodes the river bank each time there is significant rainfall." In any event, the *Arcuri* decision is not binding on this Court and in light of our Court of Appeals definition in *Plaza Health Laboratories*, this Court concludes that Building 15 is not a point source as contemplated by the Clean Water Act.

The motion is granted as to all defendants. This action is dismissed without prejudice and without costs.

The Clerk shall enter a final judgment.

SO ORDERED.