UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ex rel., Kevin MCKEOWN and No More Tolls, Plaintiffs,

v.

THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Robert Boyle, Executive Director; the New York State Thruway Authority, John R. Platt, Executive Director; the Metropolitan Transportation Authority, E. Virgil Conway, Chairman; the New Jersey Turnpike Authority, James Weinstein, Commissioner; Frank X. McDermott, Chairman; the Garden State Parkway Authority, Joseph E. Buckelew, Chairman; the Maryland

Transportation Authority, John D. Porcari, Secretary; the Delaware River and Bay Authority, Michael Harkins, Executive Director; the Delaware Transportation Authority, and Anne P. Canby, Secretary, Defendants.

No. 00 Civ. 0714(WHP).

United States District Court,
S.D. New York.

March 30, 2001.

Mr. Kevin McKeown, No More Tolls, Washington, D.C., Arthur P. Berg, New York, NY, for defendants the Port Authority of New York and New Jersey and Robert Boyle.

Norman Spiegel, Assistant Attorney General, Environmental Protection Bureau, New York, NY, for defendants the New York State Thruway Authority and John R. Platt.

Anthony P. Semancik, Deputy General Counsel, New York, NY, for defendants Metropolitan Transportation Authority and Virgil Conway.

Stuart M. Lederman, Riker, Danzig, Scherer, Hyland & Perretti, LLP, Morristown, NJ, for defendants the New Jersey Turnpike Authority, James Weinstein and Frank X. McDermott.

Cecelia E. Haney, Andrew Bayer, DeCotiis, Fitzpatrick & Gluck, LLP, Teaneck, NJ, for defendants the Garden State Parkway Authority and Joseph E. Buckelew.

Deborah A. Donohue, Assistant Attorney General, Baltimore–Washington International Airport, MD, for defendants the Maryland Transportation Authority and John D. Porcari.

Frederick H. Schranck, Deputy Attorney General, Dover, DE, for defendant the

Delaware Transportation Authority and Anne P. Canby.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

Plaintiffs Kevin McKeown ("McKeown") and his organization No More Tolls (collectively "plaintiffs") commenced this *pro se* citizen's suit against defendants, state authorities and officials responsible for operating toll roads, bridges and tunnels in New York, New Jersey, Delaware and Maryland, alleging that they operate and maintain toll booth facilities in violation of the Clean Air Act, 42 U.S.C. § 7401, *et seq.* ("CAA"), the Clean Water Act, 33 U.S.C. § 1251, *et seq.* ("CWA"), the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, *et seq.* ("RCRA"), Occupational Safety and Health Administration ("OSHA") regulations, Federal Highway Administration regulations, nuisance law, and civil rights law.

Currently before this Court are defendants' motions to strike the Environmental Protection Agency ("EPA") and its Administrator Carol Browner from the amended complaint, and to dismiss the amended complaint for lack of subject matter jurisdiction, lack of personal jurisdiction over the non-New York defendants, improper venue and failure to state a claim. Defendants also argue that the Court should decline to exercise its jurisdiction over the pendent state claims. For the following reasons, defendants' motions are granted.

### Background

Plaintiff No More Tolls is a public interest organization in Washington, D.C. (Am. Compl.¶ 9.) It is "dedicated to the protection and enhancement of the environment of the United States.... [I]t supports effective enforcement of Federal and State CAA, CWA RCRA, and other Federal and State laws." (Am.Compl.¶ 8.) Plaintiff McKeown is the Executive Director of No More Tolls. (Am.Compl.¶ 9.) The only information revealed about McKeown in the amended complaint is that he "has traveled defendant[s'] operated roadways in excess of twenty years and has sustained damages as a result of the operation of toll booths as described in [the] [amended] complaint." (Am.Compl.¶ 10.)

Defendants are state authorities and their directors who are responsible for the administration of public transportation including the operation of toll booths in New York (the "New York defendants"), New Jersey (the "New Jersey defendants"), Delaware (the "Delaware defendants") and Maryland (the "Maryland defendants"). (Am.Compl.¶¶ 8–28.)

On November 29, 1999, plaintiffs sent defendants a Notice of Intent to Sue. The Notice of Intent to Sue states that plaintiffs believe defendants are violating the CAA, CWA and RCRA by operating toll booths.

On February 3, 2000, plaintiffs filed this action by order to show cause, requesting a temporary restraining order and a preliminary injunction. Plaintiffs assert claims under the CAA, CWA, RCRA, "federal common law" nuisance, negligence and civil rights laws, and state law against defendants claiming that: (1) toll booth operators illegally slow and otherwise impede vehicular movement which unnecessarily increases toxic tailpipe emissions endangering "health and the environment"; (2) toll booth areas are "point sources" under the CWA and "cause the diminution of water quality of the surface and subterranean waters and wetland areas"; (3) toll booth operators violate the prohibition against the operation of an open dump, and "continue unpermitted discharge of pollutants into navigatable waters"; (4) toll booth operators violate "an effluent stan-

dard or limitation" by permitting discharges of leachate from toll booth locations; (5) toll booth and related operations fail to use the best practicable control technology available to reduce emissions; (6) toll booth operators are "major sources" of hazardous air pollutants causing adverse environmental effects to wildlife and aquatic life; (7) toll booth operators are "generators" of hazardous waste and violate hazardous waste standards by releasing pollutants and other substances into the air, soil, surface and ground waters in areas adjacent to the toll booths; (8) toll booth operators violate the CWA and CAA by operating without permits; and (9) toll booth operators knowingly and negligently release hazardous air pollutants into the ambient air. (Am.Compl.¶¶ 42–56.)

Initially, plaintiffs requested that this Court enjoin defendants during the pendency of this action from "slowing or otherwise impeding the movement of vehicles to collect tolls or any other activity that pollutes the air, water or soil of the United States." On February 8, 2000, this Court held a hearing and denied plaintiffs' motion.

On February 24, 2000, plaintiffs filed an amended complaint adding the United States Environmental Protection Agency ("EPA") and EPA Administrator Carol M. Browner as plaintiffs, and the Delaware River and Bay Authority and its executive director Michael Harkins as additional defendants. In all other respects, the amended complaint is identical to the initial complaint. However, plaintiffs did not serve the amended complaint until mid-March, after defendants had filed their motions to dismiss the initial complaint. (Semancik Decl. Supp. Mot. to Strike Browner & EPA from Am. Compl. ¶ 3.)

On March 9, 2000, this Court issued an order denying plaintiffs' motion for preliminary injunctive relief and a temporary restraining order. On July 13, 2000, this Court denied plaintiffs' motion for reconsideration.

### Discussion

**I. Motion to Strike EPA and Carol Browner from the Amended Complaint**

■ Defendants argue that the EPA and Browner should be stricken from the amended complaint because they did not sign the amended complaint, McKeown and No More Tolls have no authority to act on behalf of the EPA or its administrator, and the EPA is not a necessary party.

■ The CAA, CWA and RCRA all permit a citizen to bring a civil action to enforce those statutes on their own behalf. *See* 33 U.S.C. § 1365(a) ("any citizen may commence a civil action on his own behalf [under this section] ...."); 42 U.S.C. § 6972(a) ("any person may commence a civil action on his own behalf [under this section] ...."); 42 U.S.C. § 7604 (same). None of those statutes authorizes a citizen to bring an action to enforce the CAA, CWA or RCRA on behalf of the EPA or its Administrator. Moreover, McKeown and No More Tolls have not offered any reason why the EPA and Browner are necessary parties. *See, e.g., Friends of the Earth v. Carey*, 535 F.2d 165, 173 (2d Cir.1976) (noting that the CAA "simply obligates the citizen plaintiff to provide the EPA with notice of the ... violation and of the upcoming private enforcement suit.... The agency can then decide for itself whether or not to participate in the proceedings."); *Metropolitan Washington Coalition for Clean Air v. District of Columbia*, 511 F.2d 809, 814–15 (D.C.Cir.1975) ("The [CAA] citizen suit provision contemplates actions against the Administrator where he fails to perform a non-discretionary act. Alternatively, the citizen, after giving sixty days notice to the Administra-

tor, can proceed directly against the violator. When the plaintiff elects this later course, the Administrator has the right to intervene in the suit, but he is not required to be a participant in such litigation and his absence does not render the action infirm.")

Accordingly, defendants' motions to strike the EPA and Browner from the amended complaint are granted. Further, because defendants moved to dismiss the initial complaint before they were served with the amended complaint, and because the amended complaint does not materially differ from the initial complaint, defendants' motions to dismiss the initial complaint are deemed motions to dismiss the amended complaint.[1]

## II. *Motion to Dismiss Standards*

 On a Rule 12 motion to dismiss, the Court generally must accept the factual allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993) (noting that factual allegations in the complaint must be accepted as true on motion to dismiss); *Press v. Quick & Reilly, Inc.*, 218 F.3d 121, 128 (2d Cir.2000) (same). In order to survive dismissal, a plaintiff must assert a cognizable claim and allege facts that, if true, would support

such a claim. *See Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir.1997). A *pro se* litigant's complaint, "however inartfully pleaded," must be held to a "less stringent standard[ ] than formal pleadings drafted by lawyers...." *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

 On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the Court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing. *See Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir.2000). However, when matters outside the pleadings are presented on a motion to dismiss for failure to state a claim under Rule 12(b)(6), generally the district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment and afford all parties the opportunity to present supporting material. *See Morelli v. Cedel*, 141 F.3d 39, 46 (2d Cir.1998) (citing *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972)).

 On a 12(b)(2) motion the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999); *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir.1999) (citing *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d

---

1. Plaintiffs also substituted the Delaware River and Bay Authority and its Executive Director Michael Harkins for the Delaware Bridge Authority. It is not clear whether those defendants were served with the amended complaint. They have not answered or moved to dismiss it. However, since the amended complaint is dismissed for lack of standing and failure to state a claim, it is immaterial whether they were served with the amended complaint.

Cir.1996)). Since the parties have not conducted discovery, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction over the defendants. *See Kernan* 175 F.3d at 240; *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir.1998). The plaintiff's prima facie showing may be established solely by pleading, in good faith, legally sufficient allegations of jurisdiction. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). The pleadings and any affidavits are construed in the light most favorable to the plaintiff and all doubts are resolved in its favor. *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993).

■■■■■■ Similarly, on a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue in the forum district is proper falls on the plaintiff. *See, e.g., Blass v. Capital Int'l Security Group*, No. 99–CV–5738 (FB), 2001 WL 301137, at *2 (E.D.N.Y. Mar. 23, 2001). In a case involving multiple claims, the plaintiff must show that venue is proper for each claim asserted, but dismissal of an improperly venued claim is not warranted if it is factually related to a properly venued claim and the claims could be considered "one cause of action with two grounds of relief." 17 James Wm. Moore et al., *Moore's Federal Practice* § 110.05 (3d ed.1997). The court must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1352 (1990 & Supp.1999). When an allegation is so challenged "[a] court may examine facts outside the complaint to determine whether venue is proper. The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.* (citations omitted). If the defendants prevail on their Rule 12(b)(3) motion, the court has the power to dismiss or transfer the case to any district in which it could have been brought. *See* 28 U.S.C. § 1406(a); *see also Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir.1993) (holding that "[w]hether dismissal or transfer is appropriate lies within the sound discretion of the district court").

III. *Standing*

■■■■ Defendants argue that the complaint should be dismissed for lack of standing because plaintiffs have not alleged an injury in-fact, or alternatively, that any alleged injury is not redressable by this action. (*See, e.g.*, New York State Thruway Auth.'s Br. at 4–5; New Jersey Defs. Br. at 5–13.)

■■■■ An organization such as No More Tolls may have standing to "seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy. Moreover, in attempting to secure relief from injury to itself the association may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties." *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975) (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 458–60, 78 S.Ct. 1163, 1169–171, 2 L.Ed.2d 1488 (1958); *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 183–87, 71 S.Ct. 624, 654–57, 95 L.Ed. 817 (1951) (Jackson J., concurring)). No More Tolls, however, has not asserted injury to itself.

■■■■ Even in the absence of injury to itself, an association may have standing solely as the representative of its members. *See Warth*, 422 U.S. at 511, 95 S.Ct. at 2211. To have standing as the representative of its members, No More Tolls must satisfy the constitutional requirement

of a case or controversy. *See Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). The only known member of No More Tolls is McKeown. Thus, plaintiffs must establish that: (1) McKeown has suffered an "injury in fact"—"an invasion of a legally protected interest which is concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical'"; (2) "there is a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *accord, e.g., Warth,* 422 U.S. at 511, 95 S.Ct. at 2211–12; *Sierra Club,* 405 U.S. at 734–41, 92 S.Ct. at 1365–69.

The only personalized injuries alleged in the amended complaint are that McKeown "has sustained damages as a result of the operation of toll booths" (Am.Compl.¶ 10) and that "[d]efendant[s'] operation of toll booths damage the business, property and health of the [p]laintiff" in violation of antitrust laws (Am.Compl.¶ 83). Neither of those allegations is concrete or particularized, nor do they constitute a "distinct and palpable injury." *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979);

*Sierra Club v. SCM Corp.,* 747 F.2d 99, 103 (2d Cir.1984). Additionally, there are no facts alleged that support an antitrust claim.

Moreover, plaintiffs' allegations that the toll booths have a negative impact on the environment are based on the premise that toll booth increase motor vehicle toxic tailpipe emissions. (Am.Compl.¶ 29–41.) Even if the operation of toll booths increases toxic tailpipe emissions, the emissions are caused by the vehicles owned by millions of people not parties to this action. If all toll booths were removed from the mid-Atlantic states, as plaintiffs seek, millions of drivers would still experience backups, traffic jams and delays that increase tailpipe emissions. Accordingly, plaintiffs have not established that the injury complained of is "fairly ... traceable to the challenged action of defendant[s], and not ... the result [of] the independent action of some third party not before the court." *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136. Nor have they demonstrated that the elimination of toll booths would redress injuries to plaintiffs.

Further, even if plaintiffs could establish that they have standing to sue, they failed to comply with the mandatory notice requirement with respect to the Maryland and New Jersey defendants.[2]

IV. *Notice*

■■■ The CAA, CWA and RCRA require that 60 days prior to filing a citizen

2. The Delaware defendants also argue that the suit is barred by the Eleventh Amendment (*see* Delaware Defs.' bare-bones argument in their Br. at 5–6). That argument, which is the only argument proffered by those defendants, consists of two paragraphs that states, without any support, that "None of the basic federal environmental laws on which plaintiffs place crucial reliance and which include citizen suits provisions are based on an appropriate Congressional determination to cre-

ate legislation to enforce the provisions of the Fourteenth Amendment, as permitted by Section 5 of that Amendment. Therefore, these claims are barred." (Delaware Defs.' Br. at 5.) The Delaware defendants' brief is at best an invitation to research their theory and serve generally as an advocate for them. This Court declines the invitation. *See, e.g., Ernst Haas Studio, Inc. v. Palm Press, Inc.,* 164 F.3d 110, 111–12 (2d Cir.1999).

suit, a plaintiff must send notice of the alleged violations to the defendant, the state where the violation occurred, and to the EPA. *See* 42 U.S.C. § 7604; 42 U.S.C. § 6972; 33 U.S.C. § 1365.

The Supreme Court has held that compliance with the RCRA notice requirements, which are almost identical to the CAA and CWA notice requirements, is mandatory. *See Hallstrom v. Tillamook County*, 493 U.S. 20, 26, 110 S.Ct. 304, 308–09, 107 L.Ed.2d 237 (1989) ("compliance with the 60–day notice provision is a mandatory, not optional, condition precedent to suit").

The Maryland Transportation Authority and John D. Porcari aver that plaintiffs did not notify them of their intent to bring suit. (*See* Porcari Aff. ¶ 6.) Plaintiffs have not offered any evidence to the contrary. Accordingly, plaintiffs' CAA, CWA and RCRA claims against the Maryland Transportation Authority and John D. Porcari are dismissed.[3]

The New Jersey defendants do not contest receipt of plaintiffs' notice of intent to sue.[4] They argue that the information contained in the notice did not contain sufficient information.

The CAA requires that

Notices to the Administrator, States, and alleged violators regarding violation of an emission standard or limitation or an order issued with respect to an emission standard or limitation, shall include sufficient information to permit the recipient to identify the specific standard,

limitation, or order which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name and address of the person giving the notice.

40 C.F.R. § 54.3(b).

The CWA requires that

Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a).

Similarly, the RCRA requires that

Notice regarding an alleged violation of a permit, standard, regulation, condition, requirement, or order which has become effective under this Act shall include sufficient information to permit the recipient to identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of the violation, and the

---

**3.** Because plaintiffs did not serve the requisite notice on the Maryland defendants, this Court need not determine whether this Court has personal jurisdiction over them. (*See* Maryland Defs.' Br. at 3–5.)

**4.** While the other defendants except for the Metropolitan Transportation Authority and E. Virgil Conway proffer similar arguments, none of them included a copy of the notice.

The New Jersey defendants state in their brief that the same notice was sent to each defendant, however, that statement is not admissible evidence. Because the Court cannot evaluate the notices sent to the remaining defendants, their motions to dismiss for failure to comply with the notice requirements are denied.

full name, address, and telephone number of the person giving notice.

40 C.F.R. § 254.3(a). As the New Jersey defendants observe, plaintiffs' notice of intent to sue failed to identify virtually every requirement dictated by the CAA, CWA and RCRA. (*See* Cernich Aff. Ex. B: Notice of Intent to Sue.) Most importantly, plaintiffs did not identify any emission standards or limitations alleged to have been violated under the CAA, nor did they identify any specific effluent standards defendants allegedly violated under the CWA, or specific permits, standards, regulations, conditions, requirements or orders which defendants allegedly violated under the RCRA. Accordingly, the New Jersey defendants' motion to dismiss plaintiffs' CAA, CWA and RCRA claims for failure to comply with the mandatory notice provisions pursuant to those statutes is granted. *See Hudson Riverkeeper Fund, Inc. v. Putnam Hosp. Ctr., Inc.,* 891 F.Supp. 152, 154–55 (S.D.N.Y.1995) (dismissing CWA claim for failure to comply with content requirements specified in 40 C.F.R. § 135.3).

Even if plaintiffs had complied with the notice requirements, venue is improper as to the Maryland, New Jersey and Delaware defendants. Moreover, plaintiffs have failed to state a claim upon which relief can be granted.

## V. *Venue*

 The CAA and CWA contain venue provisions that permit a citizen action to be commenced only in the judicial district in which the offending source of the standard or limitation is located. *See* 42 U.S.C. § 7604(c)(1) ("Any action respecting a violation by a stationary source of an emission standard or limitation or an order respecting such standard or limitation may be brought only in the judicial district in which such source is located."); 33 U.S.C. § 1365(c)(1) ("Any action respecting a violation by a discharge source of an effluent standard or limitation or an order respecting such standard or limitation may be brought under this section only in the judicial district in which such source is located."). The RCRA venue provision limits the filing of a citizen suit to that jurisdiction where the alleged violation occurred. *See* 42 U.S.C. § 6972(a) ("Any action [against any person and any other governmental instrumentality or agency who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter] shall be brought in the district court for the district in which the alleged violation occurred or the alleged endangerment may occur.").

Plaintiffs allege that the New Jersey defendants operate toll booths in New Jersey (Am.Compl.¶¶ 17–22), that the Maryland defendants operate toll booths in Maryland (Am.Compl.¶¶ 23–24), and that the Delaware defendants operate toll booths in Delaware (Am.Compl.¶¶ 25–28). Plaintiffs do not allege that those defendants operate any toll booths in New York, or that any alleged violations or endangerment arising from any pollutants caused by those defendants occurred or may occur in New York. The Court declines to transfer those claims because plaintiffs have failed to state a claim under the CAA, CWA and RCRA (*see infra* sections VI—VIII), and grants the motions by the New Jersey, Maryland and Delaware defendants to dismiss the complaint for improper venue.

## VI. *Clean Air Act Claims*

 The CAA was implemented to prevent and control air pollution by providing "[f]ederal financial assistance and leadership ... for the development of cooperative Federal, State, regional, and lo-

cal programs to prevent and control air pollution." 42 U.S.C. § 7401(a)(3), (4). The CAA amendments of 1970 and 1977 required the EPA to promulgate national ambient air quality standards ("NAAQS") for various air pollutants. *See* 42 U.S.C. § 7409; *Wilder v. Thomas,* 854 F.2d 605, 609 (2d Cir.1988).

 Section 7410(a)(1) requires that each state adopt an implementation plant ("SIP") that provides for the "implementation, maintenance, and enforcement of national primary and secondary ambient air quality standards." *See Wilder,* 854 F.2d at 609, *Concerned Citizens of Bridesburg v. EPA,* 836 F.2d 777, 780–81 (3d Cir. 1987).

 The citizen suit provision of the CAA creates "a limited private right of action to enforce the Act's provisions." Specifically, it provides that:

> [A]ny person may commence a civil action on his own behalf—(1) against any person . . . who is alleged to be in violation of (A) an emission standard or limitation under this chapter. . . .

42 U.S.C. § 7604(a)(1) (1995). The Act defines an "emission standard or limitation" as

> any condition or requirement under an applicable implementation plan relating to transportation control measures, air quality maintenance plans, vehicle inspection and maintenance programs or vapor recovery requirements.. which is in effect under this chapter . . . or under an applicable implementation plan.

42 U.S.C. § 7604(f)(3) (1995). "In order to avoid either overburdening the courts or unduly interfering with implementation of the act . . . [C]ongress carefully circumscribed the scope of the [citizen suit] provision by authorizing citizens to bring suit only for violations of specific provisions of the act or specific provisions of an applica-

ble implementation plan." *Wilder,* 854 F.2d at 613. Thus, to state a claim under the citizen suit provision a plaintiff must allege "a violation of 'a specific strategy or commitment in the SIP and describe, with some particularity, the respects in which compliance with the provision is deficient.'" *Coalition Against Columbus Ctr. v. City of New York,* 967 F.2d 764, 769 (2d Cir.1992). *Accord, e.g., Wilder,* 854 F.2d at 610; *Council of Commuter Orgs. v. Gorsuch,* 683 F.2d 648 (2d Cir.1982).

Plaintiffs claim that defendants have violated the CAA by slowing "vehicular movement which unnecessarily increases toxic tailpipe emissions." However, the complaint does not identify any violations of specific emissions standards, or limitations under the CAA or legally enforceable strategies or commitments that the defendants made under a current SIP.

Plaintiffs also claim that toll booths are major sources of hazardous air pollutants under 42 U.S.C. §§ 7411, 7412. The CAA defines a "major source" as a "stationary source" "that emits or has the potential to emit considering controls, in the aggregate 10 tons per year or more of any hazardous air pollutant or 25 tons per year or more of any combination of hazardous air pollutants. . . ." 42 U.S.C. § 7412(a)(1). A stationary source is defined as "any building, structure, facility, or installation which emits or may emit any air pollutant," 42 U.S.C. § 7411(a)(3).

Plaintiffs do not allege that toll booths emit or have the potential to emit air pollutants. *See, e.g., Sierra Club v.. Larson,* 2 F.3d 462, 466–69 (1st Cir.1993) (ventilation buildings do not generate their own emissions and thus are not stationary sources). They claim that motor vehicles emit the air pollutants. Motor vehicles, however, are specifically excluded from the definition of stationary source. *See* 42 U.S.C. § 7602(z) ("The term 'stationary

source' means generally any source of an air pollutant except those emissions resulting directly from an internal combustion engine for transportation purposes....").

■ In addition, plaintiffs claim that defendants violate section 7408. (Am. Compl.¶¶ 115, 117.) Plaintiffs cannot state a claim under section 7408 because it imposes obligations on the EPA Administrator, who has not been named as a defendant in this action, and does not adopt any particular emission standard or limitation or refer to a commitment defendants have made under a current SIP.

Accordingly, defendants' motions to dismiss plaintiffs' CAA claims for failure to state a claim are granted.

## VII. *Clean Water Act Claims*

■ Citizen suits under the CWA are permitted only to enforce "an effluent standard or limitation" or "an order issued by the [EPA] Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a). Effluent standards and limitations are administratively established regulations of particular types of dischargers on the amounts of pollutants that may be discharged. *See* 33 U.S.C. § 1362(11); *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 979 (2d Cir.1984).

Plaintiffs assert that "[t]oll booth operators violate 'an effluent standard or limitation' under ... 33 U.S.C. [§ ] 1365(a)(1)(A) because of illegal and unpermitted discharges of leachate from toll booth locations," that "[d]efendants violate CWA Section 311 by continuing to cause the diminution of water quality of the surface and subterranean waters by release of pollutants into the surface waters and ground waters under and adjacent to toll booth areas," and that defendants fail to use "the best practicable control technology available to achieve their road use fee collection

objectives." Plaintiffs' sweeping allegations do not charge defendants with violating any effluent standards or limitations. *See, e.g., Hamker v. Diamond Shamrock Chem. Co.*, 756 F.2d 392, 394 (5th Cir.1985) ("Because the complaint ... does not allege that [defendant] is 'in violation' of an effluent standard, limitation or order, ... [plaintiffs] fail to state allegations sufficient to support jurisdiction in this case."); *Hooker Chems. & Plastics*, 749 F.2d at 979. Plaintiffs' reference to the "best practicable control technology" concerns a section of the CWA that does not establish any specific effluent limitations and is directed to the EPA, not to defendants. *See* 33 U.S.C. § 1311(b)(1)(A).

■ Plaintiffs also claim that "toll booths are point sources as defined by the EPA and violate CWA Section 301." The CWA defines "point source" as:

> any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. This term does not include agricultural stormwater discharges and return flows from irrigated agriculture.

33 U.S.C. § 1362(14). The Second Circuit has noted that "[a]lthough by its terms the definition of 'point source' is nonexclusive, the words used to define the term and the examples given (pipe, ditch, channel, tunnel, conduit, well, discrete fissure, etc.) evoke images of physical structures and instrumentalities that systematically act as a means of conveying pollutants from an industrial source to navigable waterways." *United States v. Plaza Health Labs., Inc.*, 3 F.3d 643, 646 (2d Cir.1993); *cf., Hudson Riverkeeper Fund, Inc. v. Harbor at Hastings Assocs.*, 917 F.Supp. 251, 257

(S.D.N.Y.1996) (building through which rainwater enters and passes into a river as runoff is not a "point source" under the CWA). Courts have held that "the touchstone for finding a point source is the ability to identify a discrete facility from which pollutants have escaped." *Washington Wilderness Coalition v. Hecla Mining Co.,* 870 F.Supp. 983, 988 (E.D.Wash.1994) (citing cases). Non-point sources include uncollected runoff water from, for example, oil and gasoline on a highway, or stormwater runoff from highways, construction sites or industrial parks, which are difficult to ascribe to a single polluter. *United States v. Earth Sciences, Inc.,* 599 F.2d 368, 373–74 (10th Cir.1979); *Friends of Santa Fe County v. LAC Minerals, Inc.,* 892 F.Supp. 1333, 1358–59 (D.N.M.1995); *Washington Wilderness Coalition,* 870 F.Supp. at 988.

Here, motor vehicles are the sources of the pollutants complained of, *i.e.* toxic tailpipe emissions on toll roads, and not toll booths. Further, the sources are not capable of being attributed to a discernible polluter. Moreover, the "leachate" that plaintiffs claim is released from toll booths, including carbon monoxide, nitrogen oxide and sulfur, are air emissions and not water pollutants covered by the CWA. *See* 33 U.S.C. § 1362(6) (definition of "pollutant" under the CWA).

■ Plaintiff's last claim for relief under the CWA alleges that defendants operate without the requisite permits in violation of 33 U.S.C. § 1344. (Am. Compl.¶¶ 46, 67, 69.) Section 1344 prohibits the discharge of dredged or fill material into navigable waters. Plaintiffs have not identified any navigable water, nor have they alleged that defendants have discharged dredge or fill materials into navigable waters.

For all of the above stated reasons, defendants' motions to dismiss plaintiffs' CWA claims are granted.

VIII. *Resources Conservation and Recovery Act Claims*

■ The RCRA is "a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 483, 116 S.Ct. 1251, 1254, 134 L.Ed.2d 121 (1996); *see also Prisco v. A & D Carting Corp.,* 168 F.3d 593, 608 (2d Cir.1999). The purpose of the RCRA "is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Id.* (quotations omitted); *see also* 42 U.S.C. § 6902(b). "In furtherance of that goal, RCRA contains a provision allowing citizen lawsuits for injunctive relief under either 42 U.S.C. § 6972(a)(1)(A) or (a)(1)(b). *Prisco,* 168 F.3d at 608; *also* 42 U.S.C. § 6972. Plaintiffs' claim for relief under 42 U.S.C. § 6973 (Am.Compl.¶ 77) is therefore dismissed because that section is not subject to citizen suits.

To establish a violation of section 6972(a)(1)(A), a plaintiff must establish that the defendant is currently in violation of a "permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter." 42 U.S.C. § 6972(a)(1)(A); *ABB Indus. Sys., Inc. v. Prime Tech., Inc.,* 120 F.3d 351, 359 (2d Cir.1997). In order to establish rights under 42 U.S.C. § 6972(a)(1)(B) plaintiffs must show that (1) the defendant was or is a generator or transporter of solid or hazardous waste or owner or operator of a solid or hazardous waste treatment, storage or disposal facility; (2) the defendant has contributed or is

contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste, as defined by RCRA, 42 U.S.C. §§ 6903(3), (27); and (3) that the solid or hazardous waste in question may pose an imminent and substantial endangerment to health or the environment. 42 U.S.C. § 6972(a)(1)(B); *Prisco,* 168 F.3d at 608; *ABB Indus. Sys.,* 120 F.3d at 359.

Plaintiffs have not alleged that defendants are violating a specific "permit, standard, regulation, condition, requirement, prohibition, or order" under the RCRA. Plaintiffs' conclusory allegation that defendants violated Subchapter III of RCRA (Am.Compl.¶ 75) does not allege a violation of any specific requirement in that subchapter. *See ABB Indus. Sys.,* 120 F.3d at 359. Plaintiffs also do not allege any facts from which it could be inferred that toll booth operators created solid or hazardous waste, as defined by the RCRA, disposed of it, transported it, or otherwise handled it. *See Delaney v. Town of Carmel,* 55 F.Supp.2d 237, 262 (S.D.N.Y.1999) (dismissing RCRA claims where plaintiffs failed to demonstrate that defendant created, disposed of, transported or handled solid or hazardous waste). Moreover, none of the substances mentioned in the complaint are listed as hazardous waste under EPA regulations. *See* 40 C.F.R. § 261. Nor have plaintiffs offered any facts from which it could be inferred that defendants operate an open dump (*see* Am. Compl. ¶ 79: "[d]efendants violate the prohibition against the operation of an open dump"). *See* 42 U.S.C. § 6945(a).

Accordingly, defendants' motions to dismiss plaintiffs' RCRA claims are granted.

## IX. *Federal Common Law Claims*

Plaintiffs assert a multitude of negligence, nuisance and civil rights claims entitled "federal common law claims." (Am. Compl.¶¶ 82–105.) Since there is no federal common law, those claims will be treated as alleging violations of federal statutes governing those subject matters.

### A. *Nuisance Claims*

Plaintiffs assert two "nuisance" claims. The first claim alleges that defendants' operation of toll booths "damages the business, property and health of the Plaintiff and citizens of the United States and violate[s] 15 U.S.C. [§ ] 15." (Am. Compl.¶ 83.) 15 U.S.C. § 15 address recovery for injuries to business or property for antitrust violations. Plaintiffs have not alleged any facts relevant to an antitrust claim. Defendants' motion to dismiss plaintiffs' first "nuisance" claim is therefore granted.

Plaintiffs' also allege that "defendants damage the environment" in violation of 42 U.S.C. § 7408, 33 U.S.C. § 1317, 33 U.S.C. § 1312, 42 U.S.C. § 7619, 42 U.S.C. § 7525, 42 U.S.C. § 7521, 42 U.S.C. § 7430, 42 U.S.C. § 7412 and 42 U.S.C. § 7409. (Am.Compl.¶ 85.) However, those statutes are only enforceable by the EPA Administrator and are not subject to citizen suits. Defendants' motion to dismiss plaintiffs' second "nuisance" claim is therefore granted.

### B. *Negligence Claims*

Plaintiffs assert two "negligence" claims. First, plaintiffs claim that defendants "negligently caus[e] ... hazardous substances to be released into the ambient air" in violation of 42 U.S.C. §§ 7521, 9613. (Am.Compl.¶ 91.) 42 U.S.C. § 7521 grants the EPA Administrator authority to promulgate regulations related to emissions standards for new motor vehicles or new motor vehicle engines. 42 U.S.C. § 9613 establishes when an interested party may seek review of a regulation promulgated

under that chapter. Neither statute is relevant to plaintiffs' claims.

Plaintiffs also allege that defendants negligently damage the waters of the United States by operating tolls booths in violation of 33 U.S.C. § 1323. (Am. Compl.¶ 91.) That statute is part of the Federal Water Pollution Control Act and prescribes regulations for departments, agencies and instrumentalities of the executive, legislative and judicial branches of the federal government. None of the defendants are members of any branch of the federal government.

Accordingly, defendants' motions to dismiss plaintiffs' "negligence" claims are granted.

## C. Civil Rights Claims

Plaintiffs allege that defendants violate 42 U.S.C. § 1983 by "forcing toll payers to participate in the defendants['] violations of state and Federal laws and by unnecessarily and unlawfully impeding the movement of citizens thus causing toll payers to unnecessarily pollute the environment." (Am.Compl.¶ 87.) Even if plaintiffs' section 1983 claim was not preempted by the CAA, CWA and RCRA provisions limiting the scope of citizen suits, see Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 20–21, 101 S.Ct. 2615, 2626–27, 69 L.Ed.2d 435 (1981) (finding the remedial devices provided in the Federal Water Pollution Control Act and Marine Protection, Research, and Sanctuaries Act sufficiently comprehensive, particularly since they provide for citizen suits, and therefore that Congress intended to preclude the remedy of suits under section 1983), plaintiffs have not alleged that defendants have deprived them of any particular rights, privileges or immunities secured by the Constitution or federal law. Accordingly, defendants' mo-

tion to dismiss plaintiffs' section 1983 claim is granted.

## X. Occupational Safety and Health Act Claims

Unlike the CAA, CWA and RCRA, the Occupational Safety and Health Act ("OSHA") does not contain a citizen suit provision. Rather, OSHA authorizes the Secretary of Labor to promulgate standards for workplace safety. See 29 U.S.C. §§ 655, 657–59; 29 C.F.R. §§ 1900–2400. The only provision in OSHA that permits a private citizen to bring a suit in federal court to enforce a standard is section 655(f), which allows

[a]ny person who may be adversely affected by a standard issued under this section ... at any time prior to the sixtieth day after such standard is promulgated [to] file a petition challenging the validity of such standard with the United States court of appeals for the circuit wherein such person resides or has his principal place of business, for a judicial review of such standard.

29 U.S.C. § 655(f).

The complaint does not allege that McKeown or any unnamed members of No More Tolls are employees of defendants who are adversely affected by defendants' violations of a specific OSHA standard, or that they are otherwise within the zone of interest to be protected by OSHA. Moreover, this action was filed in the district court and not the court of appeals. Because plaintiffs do not have standing to bring an OSHA action, defendants' motions to dismiss plaintiffs' OSHA claims are granted.

## XI. Federal–Aid Highway Act

Plaintiffs claim that defendants violate 23 U.S.C. § 1109 by "interrupting the normal flow of vehicular movement by dangerously widening and narrowing the

area in which vehicles travel." (Am Compl. ¶ 113.) There is no statute codified as 23 § 1109. Assuming that plaintiffs intended to cite section 109 of Title 23, plaintiffs still fail to state a claim. Section 109 prohibits the Secretary of Transportation from approving highway projects that do not "adquately meet existing and future traffic needs and conditions in a manner conducive to safety...." Thus, any claim to compel compliance under section 109 must be brought against the Secretary of Transportation. *See Road Review League v. Boyd,* 270 F.Supp. 650, 661 (S.D.N.Y. 1967). Since defendants are not a proper party to such a suit, their motions to dismiss plaintiffs' Federal–Aid Highway Act claim are granted.

## XII. *Pendent State Law Claims*

■ Plaintiff has alleged numerous claims under various state environmental laws. While the Court may exercise supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367, the Court declines to exercise such discretion because the Court has dismissed plaintiffs' federal claims early in this litigation. *See Travelers· Ins. Co. v. Keeling,* 996 F.2d 1485, 1490 (2d Cir.1993) (addressing the discretion to exercise jurisdiction over state law claims); *see also United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Accordingly, defendants' motions to dismiss plaintiffs' state law claims are granted.

### *Conclusion*

For the reasons set forth above, defendants' motion to strike the Environmental Protection Agency and Carol Browner are granted. Defendants' motions to dismiss the complaint with prejudice are also granted. The Clerk is directed to close

this case and to enter judgment in favor of defendants.